**John W. YOUNG, Petitioner-Appellant,**

**v.**

**UNITED STATES PAROLE COMMISSION, John W. Allman, Superintendent, Etc., Respondents-Appellees.**

**No. 81–1214.**

United States Court of Appeals, Fifth Circuit.

Aug. 9, 1982.

Certiorari Denied Nov. 15, 1982. See 103 S.Ct. 387.

---

**16.** *See, e.g., Genstar Chemical Ltd. v. ICC*, 665 F.2d 1304, 1309-10 (D.C.Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1750, 72 L.Ed.2d 161 (1982).

Richard M. Byrd, San Antonio, Tex. (Court-appointed), for petitioner-appellant.

Richard H. Stephens, Asst. U. S. Atty., Dallas, Tex., for respondents-appellees.

Before THORNBERRY, REAVLEY and RANDALL, Circuit Judges.

THORNBERRY, Circuit Judge:

John Wayne Young pleaded guilty to a two-count information charging him with bank extortion under 18 U.S.C. § 1952(a)(3). On November 22, 1978, he received two consecutive five-year sentences. Young raises no objection to his plea and sentencing. Rather, his petition for writ of habeas corpus under 28 U.S.C. § 2241 focuses on the actions of the Parole Commission subsequent to his incarceration. He contends that the Commission erroneously classified his offense behavior when it determined his offense severity rating. Having received a "Greatest II" classification, Young was ordered to continue in custody until the expiration of his sentence. He also claims that he was denied an interim parole hearing within the time required by 18 U.S.C. § 4208(h)(2), and that the Commission incorrectly aggregated his consecutive sentences for purposes of determining his parole status. Finally, Young argues that the Parole Commission violated his Fifth Amendment rights at his initial hearing by not giving him *Miranda* warnings. Finding no merit to any of Young's contentions, we affirm the district court's denial of the writ.

## I. OFFENSE SEVERITY RATING

The Parole Commission and Reorganization Act (PCRA), 18 U.S.C. § 4201 *et seq.* provides that the Parole Commission must consider "the nature and circumstances of the offense and the history and characteristics of the prisoner" in deciding whether to release a prisoner on parole. *Id.* § 4206(a). Section 4203 gives the Commission the authority to promulgate regulations establishing guidelines for determining parole eligibility. 18 U.S.C. § 4203(a)(1). The guidelines for parole release consideration suggest the customary range of time to be served before release for various combinations of offense severity and offender characteristics. To assist the Commissioners, the guidelines also contain examples of offense behaviors for each severity level. Mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed. 20 C.F.R. § 2.20(b).

Petitioner objects to the Commission's characterization of the aggravating circumstances surrounding his offense. Responding to questions during his initial hearing in August 1979, petitioner admitted

that in the process of committing bank extortion he transported persons in vehicles against their will through the use of firearms and physical force. Petitioner maintained before the Commission that his abduction of bank officials constituted illegal confinement rather than kidnapping. Nevertheless, the Commission ranked his offense behavior as "Greatest II severity because it involved the kidnapping of bank officials or their family members, physical force, threats of violence and use of firearms." Petitioner insists that the Commission cannot classify his offense behavior as "kidnapping" since he was never charged with kidnapping and since it was never established that his conduct would violate the elements of kidnapping as set out in 18 U.S.C. § 1201(a)(1). *See also United States v. McBryar*, 553 F.2d 433 (5th Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977).[1]

■■ This Court cannot disturb a decision by the Commission setting the time for parole release absent a showing that the action is "flagrant, unwarranted, or unauthorized." *Page v. United States Parole Commission*, 651 F.2d 1083, 1085 (5th Cir. 1981); *United States v. Norton*, 539 F.2d 1082, 1083 (5th Cir. 1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977). So long as due process requirements are observed and the Commission has acted within its statutory authority, we will not usurp the Commission's position as established in the statutory scheme enacted by Congress. *Stroud, supra*, 668 F.2d at 846. We believe that it was within the Parole Commission's discretion to place petitioner's offense behavior within the "Greatest II Kidnapping" category under 28 C.F.R. § 2.20. Kidnapping is "Greatest II" when it involves kidnapping "for ransom or terrorism; as hostage; or harm to victim." Kidnapping is "Greatest I" when

it involves kidnapping "other than listed in Greatest II; limited duration; no harm to victim (e.g., kidnapping the driver of a truck during a hijacking, driving him to a secluded location, and releasing victim unharmed)." *Id.* Petitioner's conduct appears to belong in the "Greatest II" category for it involved forcible abduction and bank extortion, which is similar to kidnapping for ransom.

■ Moreover, contrary to petitioner's assertions, the Parole Commission need not limit its consideration of aggravating factors to the offense charged or to possible offenses that might have been charged given the facts available at the time of sentencing. This Court has affirmed repeatedly the right of the Commission to consider any evidence that existed at the time of sentencing that would constitute a mitigating or aggravating circumstance affecting the prisoner's offense rating. *Page, supra*, 651 F.2d at 1086; *Jackson v. Reese*, 608 F.2d 159, 160 (5th Cir. 1979); *Payne v. United States*, 539 F.2d 443, 444 (5th Cir. 1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1131, 51 L.Ed.2d 554 (1977); *Bistram v. United States Parole Board*, 535 F.2d 329, 330 (5th Cir. 1976); *Brown v. Lundgren*, 528 F.2d 1050, 1055 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976). Under these circumstances, the Parole Commission's characterization of petitioner's offense behavior as "Greatest II Kidnapping" can hardly be viewed as "flagrant, unwarranted, or unauthorized" so as to require reversal in federal court. *See Stroud, supra*, 668 F.2d at 846; *Page, supra*, 651 F.2d at 1085.

■ We also reject petitioner's contention that the guidelines established in 28 C.F.R. § 2.20 violate the PCRA and the equal protection guarantee contained in the due process clause of the Fifth Amendment. Petitioner objects to the fact that he may

---

1. Petitioner also argues that the Parole Commission abused its discretion in failing to state with particularity the reasons for classifying his offense "Greatest II" as required under 18 U.S.C. § 4206(c). We disagree. The notice of action given to petitioner states clearly that his offense was rated "Greatest II" because it involved kidnapping, physical force, and use of firearms. It informed petitioner of his salient factor score and the range of months to be served before release. This notice is sufficient. *See Solomon v. Elsea*, 676 F.2d 282, 286 (7th Cir. 1982); *Stroud v. United States Parole Commission*, 668 F.2d 843, 846 (5th Cir. 1982).

serve a longer sentence than a person who commits an arguably graver offense. In upholding the guidelines against other constitutional challenges, this Court has held that the criteria and categories in 28 C.F.R. § 2.20 are within Congress' intent in vesting the Commission with the discretionary power to grant or deny parole. *Stroud, supra,* 668 F.2d at 847; *Page, supra,* 651 F.2d at 1085–86. *See also, Garcia v. Neagle,* 660 F.2d 983, 991 (4th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982); *Priore v. Nelson,* 626 F.2d 211, 216–17 (2d Cir. 1980). We therefore, cannot say that the guidelines are inconsistent with the Commission's responsibilities under the PCRA.

■ Similarly, we must sustain the guidelines against petitioner's equal protection challenge. It is elementary to recognize that due process and equal protection do not forbid regulatory classifications. *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *State of Florida v. Mathews,* 526 F.2d 319, 324 (5th Cir. 1976). Since petitioner's claim does not involve a suspect classification or a fundamental right, *see Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 8–12, 99 S.Ct. 2100, 2104–05, 60 L.Ed.2d 668 (1979), it will be rejected unless the agency's action is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *Frontiero v. Richardson,* 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973); *Mathews, supra,* 526 F.2d at 325.

■ The Parole release guidelines do not constitute a patently arbitrary exercise of the Commission's responsibility under the Act. Congress has given the Commission discretionary authority to grant or deny parole, 18 U.S.C. § 4203(b)(1), and as part of that grant of authority, Congress has instructed the Commission to promulgate guidelines. 18 U.S.C. § 4203(a)(1). Before releasing a prisoner on parole, the Commission must consider the seriousness of the offense, as indicated by the nature and circumstances surrounding the crime, and the history and characteristics of the prisoner.

An examination of the offense severity guidelines in 28 C.F.R. § 2.20 reveals them to be in harmony with this statutory scheme. The guidelines do not create hard and fast boundaries between classes of offenses. *Solomon, supra,* 676 F.2d at 287. The Act specifically allows the Commission to go outside the guidelines for "good cause," 18 U.S.C. § 4206(c), and this Court has indicated that it must be flexible when circumstances so require. *Stroud, supra,* 668 F.2d at 847.

■ Furthermore, the classification system is not irrational as petitioner contends. For example, a "Low" severity ranking includes gambling and cigarette law violations. "Moderate" includes property offenses and some drug violations. "Very High" encompasses property offenses involving greater amounts of money and drug offenses involving more dangerous drugs in greater quantities. The "Greatest I" and "Greatest II" classifications are similar, except that the latter contemplates offenses which place innocent persons in an unreasonable risk of harm, such as murder, any aggravated felony, aircraft hijacking, espionage, and kidnapping for ransom or terrorism. These classifications, like substantive criminal law, reveal a regard for human safety and a belief that stealing larger amounts of property and dealing in greater amounts of drugs should be treated more severely. It is not for this Court to repudiate such a rationale simply because we would have arranged the offenses in a different manner: "In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *City of New Orleans v. Dukes,* 427 U.S. 297, 304, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). *See also National Organization for Reform of Marijuana Laws v. Bell,* 488 F.Supp. 123, 134–38 (D.C.1980). Accordingly, we conclude that the parole release guidelines do not violate petitioner's right to equal protection under the Fifth Amendment.

## II. INTERIM PAROLE HEARING

█ Petitioner argues that the Commission improperly calculated the date of his interim parole hearing under 18 U.S.C. § 4208. Petitioner was sentenced on November 22, 1978 to serve two consecutive five-year sentences. The Commission held his initial parole hearing on August 13, 1979. It held his first interim hearing on October 29, 1981, and has scheduled his second interim hearing in October 1983. Section 4208(a) provides that "[w]henever feasible, the initial parole determination proceeding for a prisoner eligible for parole pursuant to subsections (a) and (b)(1) of section 4205 shall be held not later than thirty days before the date of such eligibility for parole." 18 U.S.C. § 4208(a). Section 4205(a) provides that a person serving a definite term of more than one year, like petitioner, "shall be eligible for release on parole after serving one-third of such term or terms." 18 U.S.C. § 4205(a). If a prisoner serving a term of more than one year is not paroled after the initial hearing held thirty days prior to his eligibility for parole, then the Commission must hold subsequent parole determination proceedings not less frequently than "twenty-four months in the case of a prisoner with a term or terms of seven years or longer." 18 U.S.C. § 4208(h)(2).

The Commission has provided in addition to the statutory procedures set by Congress that initial hearings be held within 120 days of a prisoner's arrival at a Federal institution, or as soon thereafter as practicable, if the prisoner will become eligible for parole in less than 10 years. 28 C.F.R. § 2.12. Since § 4208(a) allows initial hearings to be held *not later than thirty days* before parole eligibility, it permits the Commission to hold an initial hearing at an earlier date. 18 U.S.C. § 4208(a) (emphasis supplied.) Subsequent proceedings for a prisoner serving more than seven years generally should be held every twenty-four months from the date of the last hearing. 28 C.F.R.

§ 2.14(a)(1)(ii). "However, in the case of a prisoner with an unsatisfied minimum term, the first interim hearing shall be deferred until the docket of hearings immediately preceding the month of parole eligibility." *Id.*

The only irregularity that we see in the Parole Commission's treatment of petitioner is its failure to follow strictly the statutory requirement that interim hearings be held every twenty-four months after the initial hearing. The Commission apparently looked instead to its own regulation allowing the first interim hearing to be held just prior to parole eligibility. 28 C.F.R. § 2.14(a)(1)(ii). Nevertheless, since the interim hearing in this case was well within the time frame contemplated by the PCRA, this defect is no basis for habeas corpus relief. Section 2.12 permits the Commission to hold a hearing "as soon as practicable" after the 120 day period following incarceration. 28 C.F.R. § 2.12. Thus, the initial hearing in this case was held in accordance with the Commission's regulation and the PCRA. If the Commission had adhered to the statutory time limits, petitioner would not have received his initial hearing until early 1982. 18 U.S.C. § 4208(a). If the Commission then denied parole, interim hearings would follow once every two years. Since petitioner has had both an initial hearing and an interim hearing prior to the thirty days preceding his eligibility for parole, we cannot see how he seriously can contend that he has been injured by the holding of an initial hearing on a date earlier than that established by Congress. Petitioner will continue to receive interim hearings on dates several months prior to the dates that would have marked intervals for interim hearings under the statutory scheme. In passing the PCRA, Congress could have intended no more. We conclude, then, that by holding petitioner's first interim hearing not later than thirty days prior to his eligibility for parole, the Commission satisfied the requirements of § 4208.[2]

**2.** Petitioner's reliance on United States ex rel *Metro v. United States Parole Commission*, 613 F.2d 117 (5th Cir. 1980), and *Graham v. United*

*States Parole Commission*, 629 F.2d 1040, 1041–42 (5th Cir. 1980), is misplaced. We did not address the question of whether the two-

## III. CONCLUSION

Petitioner raises two additional claims that deserve brief discussion. First, he submits that it was error for the Commission to aggregate his two five-year consecutive sentences. Second, he argues that the Commission's failure to give him *Miranda* warnings during his initial hearing violated his Fifth Amendment rights. We reject both of these contentions. Under § 4205(a), petitioner is ineligible for parole until he has served at least one-third of the "term or *terms*" he is serving. 18 U.S.C. § 4205(a) (emphasis supplied). Consistent with the language of the statute, this Circuit has long held it proper for the Commission to aggregate consecutive sentences for the purpose of determining parole eligibility. *Wright v. Blackwell*, 402 F.2d 489, 489 (5th Cir. 1968). *See also Goode v. Markley*, 603 F.2d 973, 976–77 (D.C.Cir.1979). The Commission, therefore, properly computed petitioner's term of imprisonment in determining his parole eligibility.

It is equally clear that the Commission need not give petitioner *Miranda* warnings during a parole release proceeding under 18 U.S.C. § 4208 when questioning him about the circumstances surrounding his offense. This Court previously has held that "*Miranda's* prophylaxis is inapplicable in a probation revocation proceeding." *United States v. MacKenzie*, 601 F.2d 221, 222 (5th Cir. 1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980); *United States v. Johnson*, 455 F.2d 932, 933 (5th Cir. 1972). We hold today that *Miranda* is similarly inapplicable to parole release proceedings. A prisoner's interest in parole release, which is merely a conditional liberty within the Commission's discretion, is for purposes of due process protection much less than an individual's interest in proba-

tion revocation, which deprives him of a liberty that he already possesses. *Greenholtz, supra*, 442 U.S. at 10, 99 S.Ct. at 2105. Furthermore, a parole release proceeding is administrative, not adversarial, and both sides ultimately benefit if the sometimes burdensome protections of due process are not imposed. *Johnson, supra*, 455 F.2d at 933.[3]

Having examined all the challenges presented to the district court, we find them to be without merit.

AFFIRMED.

year requirement applied strictly when the Commission held the initial hearing earlier than § 4208(a) requires. The petitioners in *Metro* and *Graham* received their initial hearings and their first interim hearings after they were eligible for parole. They petitioned for habeas corpus relief on the ground that the limited hearing held by the Commission violated 18 U.S.C. § 4208(h)(2). We found that a full-scale hearing was not necessary.

**3.** The Supreme Court has recognized the possible detriment to prisoners that could result from the broad application of due process protections: "If parole determinations are encumbered by procedures that states regard as burdensome and unwarranted, they may abandon or curtail parole." *Greenholtz, supra*, 442 U.S. at 14, 99 S.Ct. at 2107.