827 F.2d 599
 Jon W. VERMOUTH, Petitioner-Appellant,
v.
Helen CORROTHERS, Regional Commissioner, United States
Parole Commission; U.S. Parole Comm.; Rob
Roberts, Warden, Federal Correctional
Institution, Pleasanton,
California,
Respondents-
Appellees.
 No. 86-1796.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 13, 1987.
Decided Sept. 9, 1987.
 
 William J. Genego, Los Angeles, Cal., for petitioner-appellant.
 Andrew M. Wolfe, San Francisco, Cal., for respondents-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before HUG, NELSON and NOONAN, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 Jon W. Vermouth appeals from the district court's denial of his 28 U.S.C. Sec. 2241 (1982) petition for a writ of habeas corpus challenging the decision of the United States Parole Commission ("Commission") that he serve his sentence until its expiration without parole. Vermouth contends that the Commission's application of the revised 1984 parole guidelines to his parole determination denied him his right to equal protection and violated the ex post facto clause of the Constitution. We note jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Vermouth was convicted on February 21, 1984, of possession with intent to distribute a controlled substance (over fifteen kilograms of cocaine) (21 U.S.C. Secs. 841(a)(1), 846) unlawful use of a communication facility (21 U.S.C. Sec. 843(b)), and interstate travel in aid of narcotics trafficking (18 U.S.C. Sec. 1952). He was sentenced to twelve years imprisonment on April 8, 1984. This court affirmed his conviction on August 9, 1985. United States v. Vermouth, 772 F.2d 915 (9th Cir.1985), cert. denied, 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986). Vermouth began serving his sentence at the Federal Correctional Institution in Pleasanton, California, on June 15, 1984.
 
 
 3
 The Commission determines parole release dates in accordance with a "salient factor score" (which predicts the risk of parole violation based on various factors) and a "severity of offense behavior" rating (ranking the severity of offenses in 8 categories), which together form the axes for a matrix that establishes parole release guidelines. 28 C.F.R. Sec. 2.20, at 91 (1986). The Commission may grant releases that are below or above the guideline time ranges "[w]here the circumstances warrant." Id. Sec. 2.20(c)[1]. At the time of Vermouth's conviction and sentencing, cocaine offenses involving more than one kilogram fell under the Category Six severity rating. 28 C.F.R. Sec. 2.20, at 95 (1984).
 
 
 4
 Prior to Vermouth's incarceration, in March 1984, the Commission announced a proposal to revise parole guidelines for narcotics offenses involving at least five kilograms of cocaine. 49 Fed.Reg. 8447-48 (1984). Upon arriving at the Pleasanton facility, Vermouth requested an initial hearing date during the Commission's next bimonthly scheduled visit in July 1984. Vermouth's request for a July date was not granted, but his hearing was scheduled for September 25, 1984.
 
 
 5
 On August 29, 1984, the Commission published its revised guidelines. 49 Fed.Reg. 34,205-09 (1984). The severity rating for cocaine offenses of more than fifteen kilograms was increased to Category Eight. Id. at 34,206. As a result, for offenders with Vermouth's parole prognosis (i.e., a salient factor score of 9), the former presumptive parole time range of 40-52 months was prolonged to 100 or more months. 28 C.F.R. Sec. 2.20, at 91 (1986). The revisions applied only to prisoners whose initial hearing was conducted on or after October 1, 1984. 49 Fed.Reg. 34,206 (1984).
 
 
 6
 Shortly before Vermouth's scheduled September hearing, the Commission informed him that it was postponing his hearing for six days because of a training session regarding the new guidelines. In fact, all individuals at Pleasanton scheduled to have their initial hearing on the September docket were rescheduled for the week of October 1-5, 1984. As a result, Vermouth's initial hearing fell on October 1, 1984, the first day that the revised guidelines became effective. Vermouth's attorney wrote a letter to the Commission objecting to the postponement or, alternatively, requesting that the former guidelines be applied at his hearing.
 
 
 7
 The Commission, however, disregarded Vermouth's objection, held the hearing on October 1, and applied the revised severity rating. Because Vermouth's remaining term, deducting statutory good time, was 96 months, and the parole guideline range was "100+" months, 28 C.F.R. Sec. 2.20, at 91 (1986), the Commission recommended that he serve his sentence to expiration without parole. The Commission also noted that, because Vermouth's crime was of "unusual magnitude," even "had the hearing been conducted during the month of September and the subject's offense rated a Category six, the panel would believe that a decision well above the guidelines would be warranted."
 
 
 8
 Vermouth unsuccessfully appealed to both the Western Regional Commission and the National Appeals Board. After properly exhausting his administrative remedies, see Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir.1983) (per curiam), Vermouth filed this Sec. 2241 habeas action in district court. The district court denied Vermouth's petition on February 12, 1986, and Vermouth timely appealed.
 
 ISSUES PRESENTED
 
 9
 1. Whether the prospective application of revised parole guidelines according to the date of the initial hearing, rather than the date of sentencing, denies equal protection (i.e., because all prisoners who are convicted and sentenced before the effective date of the revisions will not fall under the same guidelines).
 
 
 10
 2. Whether the application of revised guidelines to a prisoner who was convicted and sentenced prior to the revisions violated the ex post facto clause of the Constitution.
 
 DISCUSSION
 I. Standard of Review
 
 11
 This court reviews the district court's denial of a 28 U.S.C. Sec. 2241 habeas corpus petition de novo. Roberts v. Corrothers, 812 F.2d 1173, 1178 (9th Cir.1987). This court has also determined that it has jurisdiction to entertain a claim that the Commission's parole guidelines violated the Constitution, and that such claims are reviewable de novo. Wallace v. Christensen, 802 F.2d 1539, 1552 (9th Cir.1986) (en banc); see also Bowen v. U.S. Parole Comm'n, 805 F.2d 885, 887 (9th Cir.1986).
 
 II. Analysis
 A. Equal Protection Claim
 
 12
 Vermouth contends that the prospective application of the new severity ranking to prisoners with initial parole hearings on or after October 1, 1984, denied his right to equal protection. He argues that he was "similarly situated" to all prisoners who were sentenced at the same time for offenses involving more than one kilogram of cocaine, but was treated differently from those who benefitted from the more lenient category ratings because they had an initial hearing date prior to October 1, 1984. He therefore concludes that the new guidelines should have been applied only to those prisoners who were sentenced after October 1, 1984. In addition, Vermouth asserts that his equal protection claim should be reviewed under a strict scrutiny standard because his fundamental right to a fair hearing and a direct criminal appeal were impaired. Finally, Vermouth claims that even under a rational basis standard, his equal protection challenge still succeeds because the Commission's classification system does not advance the Commission's legitimate objectives.
 
 
 13
 I. Applicability of strict scrutiny standard
 
 
 14
 Vermouth maintains that his fundamental right to a fair hearing and direct criminal appeal were burdened. First, he claims that if a prisoner has an appeal pending, he will be unable to discuss his offense openly with the hearing panel for fear that harmful information might be disclosed that could be used against him in an eventual retrial. He contends that the Commission's policy of classifying prisoners according to their initial hearing date put him in the position of having to elect an early hearing date, prior to the disposition of his appeal, in order to avoid harsher guidelines. Second, Vermouth makes a corollary argument that prisoners might be "coerce[d]" to abandon their appeals because imminent adverse guideline changes would make postponing hearings until after their appeal an undesirable option.
 
 
 15
 Vermouth's arguments seem to constitute one basic complaint that the new guidelines made his appeal and hearing strategy more difficult. But a prisoner has no basis to expect parole guidelines to remain constant. The Commission has the statutory authority to grant or deny parole and create or amend guidelines. Wallace, 802 F.2d at 1543, 1550; 28 C.F.R. Sec. 2.20(g) (1986). Furthermore, a prisoner is not entitled to parole as a matter of right; parole is a matter of administrative discretion. Id. at 1543, 1550.
 
 
 16
 There is no indication in the record that Vermouth's hearing did not accord with due process requirements. Nor is there any evidence that his appeal process was hampered in any way--in fact, he did appeal his conviction. There is evidence in the initial parole hearing summary that even had his hearing occurred prior to October 1, 1984, the Commission probably would have exceeded its guidelines because of the seriousness of his offense.[2]
 
 
 17
 Because the new guidelines made a release date of over 100 months more likely, the implementation of the guidelines created a timing problem that made Vermouth's decision whether to request a hearing before or after his appeal more difficult. But even in September, Vermouth would have run the risk of being denied parole, or receiving a release date that exceeded the guidelines. Therefore, the Commission's classification system did not constitute a burden on a fundamental right.
 
 
 18
 2. Rational Relationship of Commission's challenged classification to a legitimate objective
 
 
 19
 Because Vermouth's claim does not implicate a suspect class or fundamental right, the relevant inquiry is whether the Commission's action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." Young v. United States Parole Comm'n, 682 F.2d 1105, 1109 (5th Cir.), cert. denied, 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 517 (1982).
 
 
 20
 The basic purpose of the Parole Commission and Reorganization Act of 1976, 18 U.S.C. Secs. 4201-4218 (1982 & Supp. III 1985), was to promote equity in parole release decisions by implementing a system of uniform guidelines. S. Rep. No. 94-369, 94th Cong., 2d Sess. 18-19, reprinted in 1976 U.S. Code Cong. & Ad.News 335, 340; see also Wallace, 802 F.2d at 1543-44. Congress granted the Commission discretionary authority to grant or deny parole. 18 U.S.C. Sec. 4203(b)(1). See also Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.") Included in that grant of authority is a congressional instruction to promulgate guidelines. 18 U.S.C. Sec. 4203(a)(1). Because excessive deviation from the guidelines would undercut the congressional goal of uniformity, Congress instructed the Commission to reevaluate the guidelines if it deviated from them with great frequency. H.R.Rep. No. 94-838, 94th Cong., 2d Sess. 27, reprinted in 1976 U.S.Code Cong. & Ad.News 335, 351, 360. The Commission has explicitly retained this authority in its regulations. 28 C.F.R. Sec. 2.20(g), at 91 (1986) ("The Commission shall review the guidelines, including the salient factor score, periodically and may revise or modify them at any time as deemed appropriate.")
 
 
 21
 The Commission revised its parole policy guidelines in August 1984, in accordance with its statutory authority and regulations, with the goal of "more adequately sanction[ing] very large scale offenses involving cocaine." 49 Fed.Reg. 34,205 (1984). The Commission found that in multi-kilo cocaine cases, "its release decisions [were] above the guidelines in a significant number of cases." Id. at 34,206. The change in guidelines necessarily required that the Commission establish some cutoff point to determine which prisoners would fall under the new rules. The Commission determined that the dividing line should be drawn on October 1, 1984, for all prisoners who had not yet appeared at an initial hearing. Id. The Commission argues on appeal, and the district agreed in its order, that this classification avoided the administrative burden of applying multiple guidelines to the group of prisoners having an initial hearing on the same date. In addition, the prompt implementation of new guidelines reflects the current, revised appraisal of the severity of various offenses.
 
 
 22
 Vermouth contends that the Commission's stated goal of easing its administrative burden is not advanced because the Commission must continue to apply whatever guidelines were applied to a prisoner at his initial hearing in all future hearings. Consequently, the Commission must check the record of each prisoner who comes before it in interim or revocation hearings to determine which set of guidelines was applied at his initial hearing. Thus, the administrative burden, because dependent upon a temporal factor, would be no greater if it were keyed to a sentencing date instead of an initial hearing date. The Commission's principal rebuttal to this argument is that defining a sentencing date is more burdensome than defining a hearing date because of possible modifications or reversals of sentences.
 
 
 23
 There is some potency to Vermouth's argument that keying the prospective application of the new guidelines to a prisoner's sentencing date would result in more equitable and uniform parole release dates than the current classification system. First, a system keyed to initial hearing dates is more susceptible to the manipulation or arbitrary scheduling by the Commission. Second, under Vermouth's system, a judge who is sentencing a convicted criminal would know that the parole guidelines that applied to a prisoner on the day of sentencing would continue to apply at his initial hearing for parole release and in all subsequent hearings.
 
 
 24
 The rational basis standard, however, does not require that the Commission choose the best means of advancing its goals. Vermouth does not challenge the legitimacy of the Commission's goals; he merely criticizes the effectiveness of the classification system. While Vermouth may be correct in suggesting that his proposed system would be a better or fairer means to achieve the Commission's objectives, that does not mean that the Commission's actions were patently arbitrary or wholly irrational. As long as the new guidelines bear some rational relationship to the Commission's objective to implement harsher guidelines for serious drug offenses in a uniform and administratively efficient manner, the court cannot "sit as a superlegislature" and dictate another administrative indexing system that it believes to be wiser or more equitable. City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam). Therefore, we affirm the district court's conclusion that the prospective application of the guidelines as of the initial hearing date of prisoners did not constitute a denial of equal protection.
 
 B. Ex Post Facto Claim
 
 25
 Vermouth argued in his brief that the application of the new increased severity rating (i.e., Category Eight) to his crime, for which he was convicted and sentenced prior to the implementation of the revised guidelines, violates the ex post facto clause of the Constitution. He contended that the Commission's regulations, specifically the offense severity guidelines, are "laws" that disadvantaged him by approximately doubling his parole release time range.
 
 
 26
 Subsequent to the submission of the briefs, however, and as acknowledged by Vermouth's counsel at oral argument, this circuit rejected similar ex post facto claims against the Commission. In Wallace v. Christensen, 802 F.2d 1539, 1553-54 (9th Cir.1986) (en banc), this circuit reaffirmed our earlier decisions holding that the Commission's parole guidelines are not laws for purposes of the ex post facto clause. The majority of other circuits are in agreement. See id. at 1553 (citing cases in other circuits).
 
 
 27
 Vermouth argues, however, that the Supreme Court's recent decision in Miller v. Florida, --- U.S. ----, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), holding that a retrospective application of revised sentencing laws violates the ex post facto clause, casts doubt upon Wallace's validity. But the Miller Court explicitly distinguished Wallace and other parole guideline cases. Id. 107 S.Ct. at 2453 ("None of the reasons given in the federal parole cases even arguably applies here.") Therefore, Vermouth's ex post facto claim is without merit.
 
 CONCLUSION
 
 28
 For the reasons discussed above, the district court's denial of Vermouth's 28 U.S.C. Sec. 2241 petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 [1]
 Currently, 18 U.S.C. Sec. 4206(c) (1982) provides that decisions outside of the guidelines may be rendered upon a showing of "good cause" if explained "with particularity" in a written notice to the prisoner. However, effective November 1, 1987, this section is repealed. 18 U.S.C. Sec. 4206 (Supp. III 1985)
 
 
 [2]
 In its written summary of the October 1, 1984, hearing, the parole panel made the following evaluation:
 The subject was the head of a large scale conspiracy which distributed extremely large amounts of Cocaine over a substantial period of time. The conspiracy utilized sophisticated electronic devices, money counting machines, and a Cocaine processing laboratory. Evidence found at the scene tends to suggest that at one time much large amounts of Cocaine had been present.
 A total of 23.9 kilograms of pure Cocaine, plus approximately $40,000 in cash were confiscated in this offense. The panel believes that the correct offense severity rating is Category eight and this combined with the salient factor score of 9 calls for a guideline range of 100+ months. However, had the hearing been conducted during the month of September and the subject's offense rated a Category six, the panel would believe that a decision well above the guidelines would be warranted. This due to the fact that the subject was involved in an offense of unusual magnitude as evidenced by the large amount of Cocaine which was confiscated, the amount of money involved, the electronics equipment and the apparent duration of the conspiracy. Even with a Category six, the panel would recommend that the subject serve the entire term.