29 F.3d 634
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Scott C. SMITH, Plaintiff-Appellant,
v.
Ron VAN BOENING, et al., Defendants-Appellees.
 No. 94-35016.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 18, 1994.*
Decided July 20, 1994.
 
 Before: FARRIS, KOZINSKI and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Scott Smith, a Washington state prisoner, appeals pro se the district court's order granting defendants' motion for summary judgment in his 42 U.S.C. Sec. 1983 action. Smith contends that defendants, who are employees of the Washington State Penitentiary (WSP), violated his First and Fourteenth Amendment rights when they failed to deliver a college correspondence course application and brochures sent to him by "City University" of Bellevue, Washington. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 We review de novo the district court's grant of summary judgment. Hopkins v. Andaya, 958 F.2d 881, 884 (9th Cir.1992). A grant of summary judgment should be affirmed only if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Taylor v. List, 880 F.2d 1040, 1044 (9th Cir.1989). To defeat a summary judgment motion, the nonmoving party must come forward with evidence sufficient to establish the existence of any elements that are essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Taylor, 880 F.2d at 1045. There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 4
 To establish liability under Sec. 1983, the plaintiff must demonstrate that defendants, acting under color of state law, deprived him of a right guaranteed under the Constitution or a federal statute. Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir.1988).
 
 1. First Amendment violations
 
 5
 Prison regulations affecting the sending of publications or other materials to prisoners are valid if they are reasonably related to legitimate penological interests. Thornburgh v. Abbott, 490 U.S. 401, 414-19 (1989). In determining whether a prison regulation is reasonably related to legitimate penological interests, a court must look at the following factors: (1) whether the governmental objective underlying the regulation is legitimate and neutral, and whether the regulation is rationally related to that objective; (2) whether there are alternative means of exercising the right at issue that remain open to the prisoner; (3) the impact that the accommodation of the asserted constitutional right will have on the prison system and its resources; and (4) the absence of ready alternatives that fully accommodate the prisoner's rights at de minimis costs to valid penological interests. Id.
 
 
 6
 Smith contends that defendants' interference with the delivery of a correspondence course application and brochures from City University pursuant to former WSP Institutional Policy 16.010(VI)(17)(1)[1] and Field Instruction WSP 500.070[2] violated his First Amendment rights. Because these policies meet the "reasonableness standard" under Abbott, this contention lacks merit.
 
 
 7
 First, defendants claim that the prison policy prohibiting inmates from entering contracts and applications was promulgated in the interest of preventing inmates from contracting with an outside party for goods or services they cannot afford or for which they do not intend to pay. This policy is neutral in that it does not distinguish among contracts and applications based on their content but restricts all types of contracts and applications. Further, the defendants claim that the prison policy requiring inmates to seek permission from officials before applying for correspondence courses was created in the interest of assisting inmates with establishing clear educational goals and objectives, verifying prerequisites for the desired program and obtaining financial aid forms when applicable. This policy is neutral because it focuses upon the inmate's educational background and goals as opposed to the content of the proposed correspondence course. Thus, these prison policies demonstrate that the governmental objectives underlying the regulation are legitimate and neutral, and that they are rationally related to that objective. See id.
 
 
 8
 Second, the prison regulations at issue do not apply to inmates seeking an Associate of Arts degree program through Walla Walla Community College. Moreover, inmates who wish to self-educate under less formal programs may receive books, literature and other materials without being subject to the prison regulations at issue. Thus, because Smith stated that he had no desire to seek a formal degree, alternative means were available to him to receive information regarding his educational pursuits. See id.
 
 
 9
 Third, although an inmate's receipt of unapproved correspondence course applications would not impact the prison system, defendants claim that the completion of such applications would create undue administrative burdens. For example, prison officials would be forced to monitor course work, test taking, receipt and/or acquisition of textbooks and financial commitments necessary to complete correspondence courses which may or may not be suitable to an inmate's educational goals. Also, prison officials could be placed in a situation where they would be providing duplicative services to an inmate who is taking courses already offered by Walla Walla Community College. Thus, the prison system would be unduly burdened if Smith's right to receive unapproved correspondence applications were accommodated. See id.
 
 
 10
 Fourth, Smith failed to establish the availability of easy and obvious alternatives to the regulations at issue that would accommodate his constitutional rights at a de minimis cost to valid penological interests. See id. Thus, the prison policies barring the receipt of unapproved correspondence applications are reasonably related to legitimate penological goals. See id.
 
 2. Fourteenth Amendment violations
 
 11
 a) Due Process Clause
 
 
 12
 A protected liberty interest may arise either from the Due Process Clause itself, or from the laws of the states. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). Prisoners do not have a liberty interest in education or rehabilitation under the Due Process Clause, Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir.1985); Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir.1982), nor under Washington state law, Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir.1987).
 
 
 13
 The restriction of a prisoner's mail must be accompanied by minimal procedural safeguards including: (1) notification to the inmate of the rejection of his mail; (2) a reasonable opportunity on the part of the inmate to protest the mail rejection; and (3) referral of the inmate's complaint to a prison official other than the person who originally disapproved the correspondence. Procunier v. Martinez, 416 U.S. 396, 418-19 (1974), overruled on other grounds, Abbott, 490 U.S. 401.
 
 
 14
 Smith contends that his due process rights were violated by prison officials when they rejected his mail and upheld the rejection through the grievance process. This contention lacks merit. First, because Smith does not have a liberty interest in prison education or rehabilitation under the Due Process Clause, nor under Washington state law, prison officials did not violate his Fourteenth Amendment rights when they failed to deliver a college correspondence course application and brochures sent to him. See Hernandez, 833 F.2d at 1319; Rizzo, 778 F.2d at 530; Hoptowit, 682 F.2d at 1254-55. Second, even if he had a liberty interest in prison education, Smith received sufficient due process of law in conjunction with the denial of the correspondence course applications: Smith received immediate notice from the mailroom that his mail was being denied as contraband, and he appealed the mailroom decision to the prison superintendent and the director of the prisons with sufficient notice and an opportunity to respond to the decision. See Martinez, 416 U.S. at 418-19.
 
 
 15
 b) Equal protection violation
 
 
 16
 Prisoners are protected under the Equal Protection Clause against invidious discrimination based on race. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Lee v. Washington, 390 U.S. 333, 334 (1968). However, conclusory allegations by themselves do not establish an equal protection violation without proof of invidious discriminatory intent. See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977). When a suspect class is not implicated the court must determine whether alleged discrimination is " 'patently arbitrary and bears no rational relationship to a legitimate governmental interest.' " Vermouth v. Corrothers, 827 F.2d 599, 602 (9th Cir.1987) (quoting Young v. United States Parole Comm'n, 682 F.2d 1105, 1109 (5th Cir.), cert. denied, 459 U.S. 1021 (1982)).
 
 
 17
 Although Smith contends that the prison officials' policy restricting unapproved correspondence applications violated his rights under the Equal Protection Clause of the Fourteenth Amendment, he failed to allege that he is a member of a protected class or that the defendants' denial of his mail was a result of purposeful or invidious discrimination. See Village of Arlington Heights, 429 U.S. at 265; Wolff, 418 U.S. at 556; Lee, 390 U.S. at 334. Moreover, as stated earlier, the prison policy regarding correspondence courses is rationally related to a legitimate penological interest. See Vermouth, 827 F.2d at 602. Thus, Smith's claim that prison officials denied him his rights under the Equal Protection Clause is without merit.
 
 
 18
 Accordingly, the district court did not err in granting defendants' motion for summary judgment in his 42 U.S.C. Sec. 1983 action. See Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 248; Matsushita, 475 U.S. at 587; Taylor, 880 F.2d at 1044.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Incoming and outgoing mail containing applications or contracts is restricted without permission from the Superintendent or designee. See WSP Institutional Policy 16.010(VI)(17)(1)
 
 
 [2]
 Only inmates who have earned an Associate of Arts degree or attained junior level status from an accredited educational institution are eligible to apply for correspondence courses with accredited academic institutions. See Field Instruction WSP 500.070