IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 85557-3-I |
| JAMALL SHONREE BAKER, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

CHUNG, J. — In this personal restraint petition, Jamall Shonree Baker challenges the rejection by the Department of Corrections (DOC) of course materials mailed to him from an educational institution based on DOC Policy No. 500.100, which relates to correspondence education for people who are incarcerated. He argues that, as applied to him, Policy No. 500.100 violates the state and federal constitution. We disagree and dismiss the petition.

FACTS

Jamall Baker is currently incarcerated at the Monroe Correctional Complex in the Special Offenders Unit. On April 19 and 26, 2023, Baker received several pieces of mail from the Stratford Career Institute, which DOC rejected pursuant to DOC Policy No. 500.100, which addresses Correspondence Education in Prisons (the Policy), because the mail was "[n]ot specifically authorized by Department policy or facility procedures." On June 6, 2023, Baker received mail from Adams State University, which was rejected for not having

"supporting documents for approval." And on June 27, 2023, Baker received mail from Rio Salado College, which was rejected because "[t]his [i]nmate does not have an approved correspondence form, as per policy 500.100."

> DOC Policy No. 500.100 provides as follows:
>
> The Department has a process for individuals to participate in self-paid post-secondary academic, vocational, and theology programs through correspondence education involving an educational course or series of classes necessary to obtain or achieve a proficiency standard. Courses will be completed through the mail with an accredited educational institution recognized by the Washington Student Achievement Council and the U.S. Department of Education.

Further, the Policy includes an eligibility requirement and outlines an approval process with which the incarcerated individual must comply before they can participate in a correspondence course. To be eligible, an incarcerated individual must have a high school diploma or a GED and must apply for the correspondence program "under the supervision of the assigned case manager." The approval process requires the incarcerated individual submit a DOC 20-305 Correspondence Study Request to their case manager. The case manager must then interview the incarcerated individual to verify their eligibility and determine if the correspondence program relates to the Custody Facility Plan, fits into the time structure and is not a security threat. If the case manager pre-approves the incarcerated individual's request, they must then submit it to the "facility Education Department," and a designated education employee interviews the incarcerated individual to "establish clear education goals and objectives." After the education employee completes its section, the facility Education Director verifies that "the educational institution is accredited by an approved association"

2

under the U.S. Department of Education or the Council for Higher Education Accreditation. If an incarcerated individual receives a rejection, the rejection notice provides that they can appeal first to the "Superintendent/designee" and then to the "Headquarters Correctional Manager."

Baker appealed three out of four of DOC's April 19 rejections of the Stratford Career Institute materials to the Superintendent, who upheld DOC's rejection. Baker did not appeal this decision to the Correctional Manager. Baker did not appeal the April 26 rejection of Stratford Career Institute materials. Baker appealed the June 6 rejection of Adams State University materials, which the Superintendent and Correctional Manager upheld. Finally, Baker appealed the June 27 rejection of Rio Salado College materials. The Superintendent upheld the rejection, but the Correctional Manager overturned the decision, explaining that Baker "is only receiving information about the college and FAFSA."

Baker then filed this personal restraint petition challenging DOC's rejection of educational materials as a violation of the U.S. Constitution and the state constitution. The Acting Chief Judge of this court determined that "Baker's challenge to DOC's mail rejection decisions based on DOC Policy 500.100 raises nonfrivolous issues" and referred the petition to a panel for a determination on the merits. Further, Baker's claims as to DOC's rejection of course catalogues

and FAFSA materials from Rio Salado College were dismissed as moot, because the Correctional Manager overturned the rejection.[1]

ANALYSIS

Baker challenges DOC's application of the Policy to materials from unaccredited institutions, as applied to him. In particular, he argues that the Policy violates the First Amendment of the U.S. Constitution and article I, section 5 of the Washington Constitution by blocking him from receiving educational materials sent by Adams State University.

To prevail on a PRP alleging constitutional error under RAP 16.4(c), the petitioner must show they are under unlawful restraint. A restraint is unlawful if a condition or manner of the petitioner's restraint violates the U.S. Constitution or the Washington Constitution or relevant laws. RAP 16.4(c)(6). A person who is incarcerated "retains those First Amendment rights that are consistent with [their] status as a prisoner or with the legitimate penological objectives of the corrections system." In re Pers. Restraint of Parmelee, 115 Wn. App. 273, 281, 63 P.3d 800 (2003). The petitioner must support the petition with facts or evidence and may not rely solely on conclusory allegations. RAP 16.7(a)(2)(i). The petitioner has the burden to prove prejudice by a preponderance of the evidence. In re Pers. Restraint of Lord, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

---

[1] In Baker's reply brief he challenges the April 19 rejections from the Stratford Career Institute as well. However, Baker appealed only some of these rejections, and only to the Superintendent, not the Correctional Manager. As he raises the April 19 rejections for the first time on reply and also failed to exhaust his administrative remedies, we decline to consider these claims.

I.        Applicable Standards

DOC argues that we should evaluate its decision to reject Baker's mail under the arbitrary and capricious standard, citing In re Pers. Restraint of Dyer, 143 Wn.2d 384, 391-92, 20 P.3d 907 (2001). By contrast, Baker contends that we should resolve his claims under the standard in Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), which inquires whether the regulation is reasonably related to a legitimate penological interest. We agree with Baker.

In Dyer, an inmate challenged DOC's denial of his continued participation in the extended family visits program. 143 Wn.2d at 390-91. DOC denied his participation because he did not meet the criteria as laid out by rule based on his history of domestic violence. Id. at 396. The court rejected Dyer's claim that he had a constitutionally protected liberty interest in extended family visits. Id. at 394. Dyer also claimed DOC did not follow the rules, regulations, and policies of Division of Prisons Directive 590.100 and, while DOC had discretion to deny extended family visit privileges to inmates with a documented history of domestic violence, the evidence of domestic violence in his case was weak. Id. at 395. Thus, on review, the question was " 'whether the action taken was so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding.' " Dyer, 143 Wn.2d at 391-92 (quoting In re Pers. Restraint of Reismiller, 101 Wn.2d 291, 294, 678 P.2d 323 (1984)).

Here, unlike in Dyer, 143 Wn.2d at 390-94, in which the court determined the claim did not involve a protected constitutional right, Baker's challenge is to a

5

policy that implicates his protected First Amendment rights. Specifically, he asks whether the Policy violates his constitutional rights "by precluding him from receiving educational materials simply because they are not from an accredited educational institution and were not previously approved by DOC."

For this type of challenge to the constitutionality of a policy that implicates a protected constitutional right, the Turner standard applies. Washington courts have adopted the basic premise from Turner "call[ing] for judicial deference to the decisions of prison administrators in light of their unique interest in maintaining security and day-to-day order." McNabb v. Dep't of Corr., 163 Wn.2d 393, 405, 180 P.3d 1257 (2008). As a condition of confinement, an individual's right to send and receive mail lawfully may be restricted by a prison regulation that is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89 (challenge to prison's mail and marriage regulations); see also Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989) (applying Turner reasonableness standard to regulation of subscription materials mailed to prisoners); Livingston v. Cedeno, 164 Wn.2d 46, 56, 186 P.3d 1055 (2008) (challenge to withholding of records under mail policy).

Accordingly, we review Baker's challenge under the standard set out in Turner, rather than the "arbitrary and capricious" standard.[2]

---

[2] Baker suggests that he has a distinct free speech claim under article I, section 5 of the Washington Constitution. A party who argues that "a provision of the state constitution offers more protection than a similar provision in the federal constitution must persuade the court this is so by means of the analysis set forth in State v. Gunwall." State v. Ladson, 138 Wn.2d 343, 347-48, 979 P.2d 833 (1999). See State v. Gunwall, 106 Wn.2d 54, 64-67, 720 P.2d 808 (1986) (identifying six nonexclusive factors for this analysis). However, as DOC points out, Baker does not provide the required analysis under Gunwall. We therefore decline to separately address whether the state constitution requires any different analysis of the issue Baker raises in this petition.

II.     Rejection of Mail under the Policy

DOC rejected materials sent to Baker from Adams State University because Baker failed to obtain advance approval as required by the Policy. Baker argues that this rejection was improper because these materials "do not fall within the purview of DOC Policy 500.100." Applying the Turner factors, Baker contends that the Policy is not reasonably related to a legitimate penological interest.

As an initial matter, we clarify the limited nature of the challenge here. The Policy limits educational correspondence to those courses for which the person has applied and received approval from DOC under the Policy. Further, the Policy limits approval to courses provided by accredited educational institutions recognized by the Washington Student Achievement Council and the U.S. Department of Education. The materials at issue in Baker's petition are from Adams State University, which the undisputed record indicates is an accredited educational institution for purposes of the Policy.[3] Baker states the issue as follows: "As applied to Petitioner, does [the Policy] violate his rights . . . by precluding him from receiving educational materials simply because they are not from an accredited educational institution and were not previously approved by DOC?" But the more limited question raised by the record before us is whether, as applied to Baker, the Policy requiring him to apply to DOC for approval to receive materials from an accredited educational institution violates his rights.

---

[3] Exhibit 1 to Pet'r Reply Br. at 6 (Adams State University's correspondence courses "are post-secondarily regionally accredited by the Higher Learning Commission of the North Central Association of College and Schools."); Exhibit 1 to DOC Supplemental Br. at 1-2 (Adams State University "is accredited by the U.S. Department of Education for correspondence education.").

Turner identified the following factors a court must consider to determine the reasonableness of a regulation: (1) whether there is a rational connection between the regulation and the legitimate government interest set forth, (2) whether incarcerated individuals have alternative means to exercise the claimed right, (3) what impact accommodating the asserted right would have on department resources, prison guards and other incarcerated individuals and (4) whether there are other alternatives that would accommodate the incarcerated person's rights at a minimal cost to the department's stated penological interest. 482 U.S. at 89-91.

As to the first Turner factor, rational connection between regulation and interest, Baker asserts that DOC does not have a legitimate penological interest in preventing incarcerated individuals from being taken advantage of by unaccredited institutions, and that this policy does not involve safety issues, citing Parmelee, 115 Wn. App. at 273. He asserts that instead, DOC has an affirmative statutory obligation to provide incarcerated individuals with educational material to "improve their chances of successful reentry into society," which cannot be achieved by the Policy because it prevents him from "receiving materials from unaccredited educational institutions such as Adam[s] State University."[4]

The aspect of the Policy that limits correspondence materials to accredited institutions is not at issue here, as Adams State University is accredited. Thus, we analyze the first factor with regard to DOC's process requiring preapproval for

_____

[4] As discussed above, the record indicates that Adams State University is an accredited educational institution. Therefore, we conduct our analysis with that fact in mind.

such materials. DOC asserts it has a legitimate interest in effectively administering prison activities, including rehabilitating incarcerated individuals by providing educational programs to prepare them for reentry, citing RCW 72.09.460. As such, it contends that the process it created for incarcerated individuals to apply to correspondence courses is aimed at achieving effective administration of prison facilities.

We agree with DOC that for purposes of determining whether a policy is reasonably related to a state interest under Turner, the state's interest may include a prison's interest in orderly administration. See McNabb, 163 Wn.2d at 406 ("unique demands of prison administration warrant judicial deference to prison administrative decisions"); see also In re Pers. Restraint of Goulsby, 120 Wn. App. 223, 231, 84 P.3d 922 (2004) ("[T]he prison system should not be micromanaged by the courts, particularly as to issues relating to prison security.") (citing Turner, 482 U.S. at 84-85). Requiring incarcerated individuals to utilize a process to obtain educational materials is reasonably related to its legitimate interest in effective administration. Further, limiting the approval to courses with accredited institutions is also reasonably related to a legitimate state interest. Under RCW 72.09.460(4)(a)(iv), DOC must provide incarcerated individuals with "appropriate vocational, work, or education programs that are not necessary for compliance with an incarcerated individual's reentry plan." DOC must "periodically review, goals for expanding access to postsecondary degree and certificate education programs and program completion for all incarcerated individuals." RCW 72.09.460(9). Requiring preapproval for correspondence

9

courses is thus reasonably related to meeting DOC's obligation to provide inmates with access to appropriate educational opportunities.

As to the second Turner factor, whether there is an alternative means to exercise the right, Baker maintains he has no alternative to receive unaccredited materials. Again, the record before us does not support a challenge to the Policy regarding materials for unaccredited courses. And as DOC notes, to participate in the correspondence course with Adams State University, an accredited institution, Baker could have applied for approval under the Policy. Moreover, to the extent Baker seeks educational enrichment content that is not for course credit, there are alternative means. For instance, DOC offers enrichment content through a new application called Edovo, which is "free of charge and offer[s] a variety of topics of different backgrounds to individuals at their interest."

As to the third Turner factor, the impact of accommodating the right, Baker argues that if unapproved educational materials were allowed, he would be assuming the risk and paying his own money to learn about topics that interest him, which does not impact DOC or create any increased security risk. He notes he is "not trying to necessarily gain a proficiency standard" and wishes to "use the courses for information based on things that I am interested in. . . . [and] I can't use the internet so these course[s] provide useful [information] . . . ." DOC responds that the Policy's process allows it to ensure the program is meeting the

incarcerated individual's needs and goals for reentry.[5] Further, allowing unfettered access to correspondence courses without preapproval and the process set out in the Policy would impact DOC's ability to ensure programs are properly administered and fit within the individual's time structure. We agree with DOC that exempting unapproved materials from educational institutions from the Policy would interfere with DOC's ability to properly regulate the prison and meet the goals of the incarcerated individual.

As to the fourth Turner factor, whether there are alternatives to the regulation, Baker suggests that DOC could limit the Policy to correspondence courses from accredited institutions only if the incarcerated individual is "seeking 'to obtain or achieve a proficiency standard.' " Baker contends this would not require an amendment to the policy, would not enhance an incarcerated person's state and federal constitutional rights, would not pose any dangers, and would be of minimal cost. DOC characterizes Baker's petition as failing to identify any alternatives other than that "he should receive unfettered access to correspondence courses, even from unaccredited institutions." Indeed, Baker's proffered alternative—allowing him to receive materials from Adams State University, an accredited institution, without first seeking and receiving

---

[5] DOC also argues that giving incarcerated individuals access to correspondence courses without approval would "allow unaccredited institutions to take advantage of their students in the sense that they offer unaccredited courses, take students' money, and in return provide a certificate or degree with little to no value afterwards because it comes from an unaccredited source." However, as discussed above, we do not address here the Policy's limitation of approved materials to those from accredited courses.

approval—would defeat the Policy's objective of regulating access to educational courses.[6]

We hold that under Turner, the Policy requiring preapproval before an incarcerated individual can participate in a correspondence course with an accredited educational institution is constitutional because it is reasonably related to the legitimate penological interests of effective prison administration and allowing inmates access to appropriate educational opportunities.

We dismiss Baker's petition.

_Chung, J._

WE CONCUR:

_Díaz, J._          _Hazelrigg, ACJ_

---

[6] We note that several federal courts that have considered similar challenges have held under Turner that prison policies restricting access to educational materials through correspondence courses are not unconstitutional. See, e.g., Smith v. Van Boening, 29 F.3d 634, 1994 WL 379155, at *1 (1994) (unpublished) (rejecting challenge to former Washington State Penitentiary Institutional Policy restricting incoming and outgoing mail containing applications or contracts without permission and policy restricting access to correspondence courses with accredited academic institutions to inmates with requisite educational background); Pratt v. Cox, 3:11-cv-00604-RCJ, 2012 WL 7214076 at *10 (D. Nev. 2012) (prison did not violate the petitioner's "constitutional right to educational materials" by requiring him to utilize its process to engage with correspondence courses). Though these unpublished federal cases are not controlling, we cite them solely for illustrative purposes. GR 14.1(c).