**Joseph ALLEN, Plaintiff,**

v.

**Tana WOOD, et al., Defendants.**

**No. CY–95–3171–LRS.**

United States District Court,
E.D. Washington.

June 9, 1997.

---

Joseph Allen, Walla Walla, WA, pro se.

Nancy Joan Krier, Asst. Attorney General, Olympia, WA, for Defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT WITH PREJUDICE

SUKO, United States Magistrate Judge.

**BEFORE THE COURT** is defendants' motion for summary judgment and dismissal, **Ct. Rec. 17.** Upon hearing without oral argument, plaintiff appeared *pro se*, and defendants were represented by Assistant Washington State Attorney General Nancy Joan Krier. The parties have consented to proceed before the magistrate judge.

The court previously advised plaintiff regarding the summary judgment requirements of Fed.R.Civ.P. 56. See *Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir.1988). Plaintiff, however, has not responded to defendant's motion.

On January 18, 1996, plaintiff filed an amended complaint pursuant to 42 U.S.C. § 1983 alleging defendants violated his constitutional rights when plaintiff received several mail rejection notices from July 1995 through December 1995. Plaintiff asserts the mail rejection policies at the Washington State Penitentiary (WSP) violate his First Amendment rights. Plaintiff claims his Eighth Amendment rights were violated when defendants engaged in calculated discrimination and harassment tactics. Plaintiff contends the rejection of his mail was based on plaintiff's sexual orientation in violation of his due process and equal protection rights under the Fourteenth Amendment. Plaintiff also asserts his Fifth Amendment rights were violated when he was denied priorly authorized, approved and prepaid publications. Plaintiff seeks declaratory relief, compensatory and punitive damages, and costs.

## FACTS

Plaintiff is an inmate formerly housed at the WSP and now at the Washington Corrections Center. The WSP is a maximum security prison. Between July and December

1995, defendants at the WSP applied Department of Corrections (DOC) Policy 450.100 and WSP Field Instruction 450.100 to reject unauthorized catalogs, sexually explicit materials, unauthorized postage stamps and an oversized greeting card sent to plaintiff. (Ct. Rec.17, Ex. 120–122.)

Defendants include WSP mail room machine operators Nancy Frost, Dennis Potts, and Eugene Edwards; WSP mail room Supervisor Sgt. Fred Warneka; WSP Superintendent Tana Wood; Associate WSP Superintendent Ronald Van Boening; and Division of Prisons Director Tom Rolfs. Tom Rolfs is responsible for promulgating, interpreting, and ensuring enforcement of policies, rules, regulations and directives for all Division of Prisons (DOP) adult corrections facilities. (Ct. Rec. 17, Ex. 131, Rolfs Aff.)

WSP Field Instruction 450.100 which was in effect during the summer of 1995 and until October 9, 1995, defined "catalog" as "a book or pamphlet containing multiple pages and exhibiting and offering items or services usually with descriptive comments and often illustrations." The field instruction effective October 9, 1995 defined "catalog" as "a book or pamphlet containing more than one page exhibiting and offering items or services. A catalog usually contains descriptive comments and/or illustrations and a price list." WSP inmates are not permitted to receive catalogs in the mail, except for hobby, craft and curio catalogs for inmates with related curio permits. (Ct. Rec. 17, Exs. 121, 122, Field Instructions.)

DOP Policy 450.100 defines and sets parameters with respect to sexually explicit materials which may be received by inmates, and sets forth factors to determine what is appropriate for inmate viewing within an institution. The term sexually explicit refers to those written and/or graphic materials that depict one of the following:

1. Where one of the participants in the act is, or appears to be, non–consenting;

2. Where one of the participants appears to be forceful, threatening, or violent;

3. Where one of the partners is dominating one of the other participants and

one of the individuals is obviously in a submissive role or one of the participants is degraded, humiliated, or willingly engages in behavior that is degrading or humiliating;

4. One of the participants is a child, or appears to be a child;

5. Where there is actual penetration, be it penile/vaginal–oral, penile–anal, or penile–vaginal; digital–anal, digital–vaginal; or insertion of any inanimate object in the vaginal or anal cavity, and the depiction in the context presented is deemed to be a threat to legitimate penological objectives;

6. Where any bodily excretory function is depicted;

7. Material depicting bestiality, sadomasochistic behavior, bondage; or

8. The material is reasonably deemed to be a threat to legitimate penological objectives.

Incoming mail which is deemed sexually explicit will not be delivered to the inmate. DOC Policy 450.100(A)(2)(j). (Ct.Rec.17, Exs.120–122.) The applicable Field Instruction, WSP 450.100, mirrors the definitions of the term "sexually explicit" found in the regulations. (Ct.Rec.17, Ex. 121, 122.) The Field Instruction and Policy 450.100 are neutral with respect to sexual orientation. (Ct. Rec.17, Ex. 121, 122.)

WSP Field Instruction 450.100 limits the number and format of U.S. postage stamps which inmates may receive in the mail. (Ct. Rec. 17, Exs. 121, 122, Field Instructions; Ex. 130, Wood Aff.; Ex. 127, Warneka Aff.) An inmate can buy loose postage stamps in the WSP inmate store. (Ct. Rec. 17, Ex. 130, Wood Aff.) DOP Policy 450.100 and WSP Field Instruction 450.100 also prohibit greeting cards which are padded, laminated, musical, and/or larger than eight inches by ten inches. (Ct. Rec. 17, Exs 120–122.)

The WSP mail room processes between 10,000 and 20,000 pieces of mail per day for 3,200 inmates and staff. (Ct. Rec. 17, Ex. 127, Warneka Aff.) All mail to WSP inmates is inspected by staff for consistency with policies, procedures, and regulations, and to determine the presence of contraband. (Ct.

Rec. 17, Ex. 120, DOP Policy 450.100; Ex. 127, Warneka Aff.; Ex. 130, Wood Aff.) Approximately seven WSP staff personally handle, document, and process all incoming and outgoing mail at the institution, including inmate mail. (Ct. Rec. 17, Ex. 127, Warneka Aff.)

Inmate mail which is not consistent with the policies and procedures is rejected. (Ct. Rec. 17, Ex. 127, Warneka Aff.; Exs. 120–122, Policy and Field Instructions.) Inmates who have mail rejected may appeal to the DOP Director. (Ct. Rec. 17, Ex. 102, Mail Rejection stating appeal rights.)

On July 25, 1995, defendant N. Frost rejected *L.U.E.Y., Silver Nugget Foundation* as an unauthorized catalog. Defendant Van Boening denied the mail rejection appeal on August 1, 1995. Defendant Rolfs further upheld the rejection on September 6, 1995, finding this publication met the DOP policy definition of sexually explicit. (Ct.Rec.17, Ex. 102.)

On August 4, 1995, defendant D. Potts rejected *Southern A.I.A.* as an unauthorized catalog. Defendant Rolfs upheld the rejection on September 6, 1995, finding this publication met the DOP policy definition of sexually explicit. (Ct.Rec.17, Ex. 103.)

On August 11, 1995, defendant E. Edwards rejected *Omnific Designs West/Loving Alternatives* and sent the publication to headquarters for review. Defendant Rolfs denied plaintiff's appeal on August 25, 1997, finding the publication *Loving Alternatives,* July/August 1995 issue, met the WSP Field Instruction definition of catalog. On September 6, 1995, defendant Rolfs further upheld the rejection, finding the publication met the DOP policy definition of sexually explicit. (Ct. Rec.17, Ex. 104.)

On August 31, 1995, defendant Frost rejected *Omnific Designs West* as an unauthorized catalog. Defendant Rolfs upheld the rejection, finding the publication met the DOP policy definition of sexually explicit. (Ct.Rec.17, Exs.104, 105.)

On September 11, 1995, defendant Frost rejected personal correspondence from Dean Dunlap as it depicted penile/anal penetration and sadomasochism. Defendant Van Boen-

ing denied plaintiff's appeal on September 20, 1995. (Ct.Rec.17, Ex. 106.)

On September 12, 1995, defendant Potts rejected *H.M.C.S.* as an unauthorized catalog. Defendant Van Boening denied plaintiff's appeal on September 20, 1995. (Ct. Rec.17, Ex. 107.)

On October 4, 1995, defendant Potts rejected *K.P.* as an unauthorized catalog. Defendant Van Boening denied plaintiff's appeal on October 13, 1995, finding the publication met the definition of catalog defined in WSP Field Instruction 450.100 and also that the publication had been modified by a black marker on numerous pages, rendering the publication contraband. (Ct.Rec.17, Ex. 108.)

On October 11, 1995, defendant Frost rejected *Melinda Klemas* as an unauthorized catalog. Defendant Van Boening denied the appeal on October 17, 1995. (Ct.Rec.17, Ex. 109.)

On October 17, 1995, defendant Potts rejected postage stamps sent to plaintiff as they were not in a book. Plaintiff did not appeal. (Ct.Rec.17, Ex. 110.)

On October 27, 1995, defendant Potts rejected a book of stamps sent to plaintiff because the book did not have plaintiff's name or DOC number written on it. Defendant Van Boening denied the appeal on November 1, 1995. (Ct.Rec.17, Ex. 111.)

On November 22, 1995, defendant Potts rejected *David Dunn C.C.* as a catalog. Defendant Van Boening denied the appeal on November 29, 1995, citing safety (fire hazzard) and security (contraband concealment) concerns. (Ct.Rec.17, Ex. 112.)

On December 8, 1995, defendant Potts rejected a greeting card as it was larger than eight inches by ten inches. Plaintiff did not appeal. (Ct.Rec.17, Ex. 113.)

On December 14, 1995, defendant Frost rejected *K.P.* as the publication depicted penetration. Plaintiff did not appeal. (Ct. Rec.17, Ex. 114.) Other than the mail rejections from July and August 1995, plaintiff did not appeal his mail rejections to the DOP level. (Ct. Rec. 17, Exs. 102–105, 106–111, 113, 114, Mail Rejections.)

In August 1995, plaintiff initiated a grievance challenging the definition of "catalog" in WSP F.I. 450.100 and asserting the Field Instruction was used to promote sexual orientation discrimination toward bi/gay magazines and plaintiff. (Ct.Rec.17, Ex. 119.) Defendant Wood responded to this grievance at the Level II appeal stage. (Ct. Rec. 17, Ex. 130, Wood Aff.; Ex. 119.)

Defendant Warneka also responded to a grievance regarding the definition of "catalog" in August 1995. (Ct.Rec.17, Ex. 118.) In addition, defendant Warneka did not permit plaintiff to pay for a publication with stamps. (Ct. Rec. 17, Ex. 127, Warneka Aff.) Inmates are prohibited from attempting to use stamps as currency. (Ct. Rec. 17, 130 Wood Aff.; Ex. 127, Warneka Aff.) Inmates must make purchases in full from their inmate trust accounts. (Ct. Rec. 17, Ex. 127, Warneka Aff.)

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). Under Rule 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

Defendants presented the underlying facts of this case. Plaintiff did not file a memorandum in opposition to summary judgment. Therefore, the court construes defendants' facts as uncontroverted. LR 56.1(d), Local Rules for the Eastern District of Washington. Defendants request a resolution of plaintiff's claims as a matter of law. The court finds summary judgment is appropriate; no facts are in dispute and the constitutionality of the challenged regulations and actions may be determined as a matter of law.

## DISCUSSION

### A. First Amendment Claims

Plaintiff asserts defendants Potts, Edwards and Frost issued numerous mail rejection notices between July and December 1995 in violation of plaintiff's First Amendment rights. Defendants applied DOC Policy 450.100 and WSP Field Instruction 450.100 to reject unauthorized catalogs, sexually explicit materials, unauthorized postage stamps and an oversized greeting card.

The Supreme Court has articulated several principles applicable to prisoner claims alleging violations of constitutional rights. First, "federal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Id.* Thus, prison inmates possess the right of free speech under the First and

Fourteenth Amendments, including the right to receive publications. *Bell v. Wolfish,* 441 U.S. 520, 545, 550–51, 99 S.Ct. 1861, 1880–81, 60 L.Ed.2d 447 (1979); *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 1878–79, 104 L.Ed.2d 459 (1989); *Procunier v. Martinez,* 416 U.S. 396, 407–11, 94 S.Ct. 1800, 1808–10, 40 L.Ed.2d 224 (1974); *Pepperling v. Crist,* 678 F.2d 787, 791 (1982) ("[T]he blanket prohibition against receipt of the publications by any prisoner carries a heavy presumption of unconstitutionality."); *see also Sizemore v. Williford,* 829 F.2d 608, 610 (7th Cir.1987) (in absence of legitimate penological interests, prisoners retain First Amendment·right to receive and read publications).

The Supreme Court also has clearly held that restrictions upon prisoners' constitutional rights are permissible, so long as those restrictions are "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 1878–79, 104 L.Ed.2d 459 (1989). This standard reflects the view that prison administrators, and not the courts, should resolve difficult and complex questions of institutional operations. *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261–62. Further, the standard is necessary so that courts avoid becoming the ultimate arbiters of every administrative problem in correctional institutions. *Id.*

The Court has set forth factors relevant to the determination of reasonableness, including: 1) whether a "valid, rational connection" exists between the prison regulation and a legitimate and neutral government interest; 2) whether alternative means of exercising the restricted constitutional right remain open to inmates; 3) the extent to which the accommodation of the asserted right will impact the prison staff and resources; and 4) whether the regulation is an "exaggerated response" to prison concerns in light of available alternatives. *Turner,* 482 U.S. at 89–91, 107 S.Ct. at 2261–63; *Johnson v. Moore,* 926 F.2d 921, 924 (9th Cir.1991).

Although the standard enunciated by the Court in *Turner* reflects the deference owed to prison administrators, the Court did not intend for courts to simply rubberstamp the decision of prison officials. For example, the Court explains that "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2262. Thus, a court is required to closely examine whether a regulation is reasonably related to legitimate penological interests. With these principles in mind, the court proceeds to the challenged regulations.

### 1. Catalogs

■ Plaintiff contends defendants violated plaintiff's First Amendment rights by exaggerating the legitimate penological interest in rejecting plaintiff's prior authorized and approved singles publications. From July to December 1995, defendants Frost, Potts and Edwards rejected numerous publications because they fit the WSP Field Instruction definitions of unauthorized catalogs.

Assuming plaintiff's constitutional rights were implicated when certain publications were rejected as unauthorized catalogs, the regulation is reasonably related to legitimate penological goals. First, defendants assert several safety and security–related justifications including limiting the volume of publications received by the facility due to storage limits, reduction of fire hazards, preserving sanitary conditions, and limiting opportunities for the introduction and hiding of contraband. This regulation makes distinctions based on content (i.e. some curio catalogs are permitted). However, such permission is based on the rehabilitative purpose of curio activities, and therefore is regarded as "neutral" within the prison context. *See Thornburgh v. Abbott,* 490 U.S. at 415–16, 109 S.Ct. at 1882–83.

Second, although WSP inmates cannot receive catalogs in the mail except for hobby craft and curio catalogs for inmates with related curio permits, they can view acceptable catalogs from various vendors in common areas such as the library or living units. Here, defendants have shown that alternative means of access to catalogs are available. Third, defendants have asserted in their affidavits that an increase in mail activity creat-

ed by allowing inmates unlimited access to catalogs would greatly burden the prison mail system. Finally, plaintiff has failed to come forward with any readily available alternative to the existing prison policy. Because the regulation regarding catalogs is reasonably related to legitimate penological interests, it is constitutionally valid. *See Turner,* 482 U.S. at 89, 107 S.Ct. at 2261–62. Accordingly, **IT IS ORDERED** defendants' motion for summary judgment regarding catalogs is **GRANTED.**

### 2. Sexually Explicit Materials

■ Defendant Rolfs deemed sexually explicit four of the publications mail room workers initially rejected as catalogs. Plaintiff also challenges the rejection of personal correspondence on the basis it depicted penile/anal penetration and sadomasochism, and the rejection of a publication entitled *K.P.* because it depicted penetration.

Defendant Rolfs avers, based on his research of numerous studies, that inmates exposed to pornography become desensitized to what they are viewing and require more and more graphic material which may ultimately result in acting out sexual fantasies. Because of the lack of physical relationships of choice in prison, there is an increased possibility that inmates who view sexually explicit material will engage in consensual and non–consensual homosexual sex, thereby increasing the spread of HIV, hepatitis and other sexually transmitted diseases.

Defendant Rolfs also avers that aggressive and predatory behavior, such as nonconsensual sex, sexual molestation, masturbation or exposing in front of staff, and inappropriate touching or writing to staff, endangers the lives and safety of staff and inmates. Furthermore, defendant Rolfs notes sexually explicit materials often portray women in dehumanizing and submissive roles which leads to disrespect for female correctional officers and other staff. Defendants have submitted several studies to support these assertions. Plaintiff fails to offer any evidence to discredit these justifications.

The court finds the objectives of security and rehabilitation are legitimate. *Thornburgh,* 490 U.S. at 415, 109 S.Ct. at 1882–83;

*Pell v. Procunier,* 417 U.S. 817, 823, 94 S.Ct. 2800, 2804–05, 41 L.Ed.2d 495 (1974). There is no blanket prohibition of a certain publication; rather, each issue is reviewed separately. Because prison administrators distinguish between publications on the basis of their potential implications for prison security and rehabilitation, they are "neutral." *Thornburgh,* 490 U.S. at 415–16, 109 S.Ct. at 1882–83.

Next, the court examines whether alternative means of exercising the asserted right remain open to inmates. The policy regarding sexually explicit materials is not a complete prohibition of materials of a sexual nature coming into the WSP. Inmates have alternative means of exercising their First Amendment rights, by receiving publications not deemed inappropriate in the prison setting. It is not the burden of prison officials to disprove the availability of alternatives. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 350, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282 (1987).

Third, the court addresses the impact an accommodation of plaintiff's asserted rights would have on staff, other inmates and prison resources. Defendants contend it is impossible to control who may view sexually explicit material once it enters a prison. Because many sex offenders are housed throughout the WSP, availability of sexually explicit materials has the potential of undermining the rehabilitation efforts of these offenders. Defendants assert the only way to control the flow of sexually explicit materials into a prison is to eliminate their entry at the source. Plaintiff fails to refute this assertion. As the *Turner* court instructed, we should defer to the "informed discretion of corrections officials" where accommodating the right would have a significant "ripple effect" on prison staff. 482 U.S. at 90, 107 S.Ct. at 2262.

Finally, the existence of obvious, easy alternatives which fully accommodate the inmates' rights at de minimis cost to valid penological interests may suggest that the regulation is unreasonable and an "exaggerated response" to prison concerns. On the other hand, "the absence of ready alternatives is evidence of the reasonableness of a

prison regulation." *Turner* at 482 U.S. 90–91, 107 S.Ct. at 2262. Furthermore, prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. *Id.* Here, plaintiff has offered no evidence of alternatives which could be reasonably implemented at the WSP. In the absence of any evidence to the contrary and on the basis of the limited record presented in this case, the court finds the regulation satisfies the reasonable relationship standard. Accordingly, **IT IS ORDERED** defendants' motion for summary judgment regarding sexually explicit materials is **GRANTED.**

### *3. U.S. Postage Stamps*

■ Plaintiff contends the postage stamp regulation violates his First Amendment rights. The court takes judicial notice that postal stamps have a face monetary value and could be bartered. *See Kaestel v. Lockhart,* 746 F.2d 1323, 1324 (8th Cir.1984). In the Eighth Circuit, the Court of Appeals has recognized the constitutionality of prohibiting the receipt and use of postal stamps. *Id.* at 1325. This court acknowledges the WSP policy regarding postal stamps advances the interest of penal security and order in prohibiting contraband trading, and imposes a minimal intrusion.

Furthermore, plaintiff is afforded reasonable opportunities to obtain postal stamps because inmates are permitted to buy loose postage stamps in the WSP inmate store. Accordingly, **IT IS ORDERED** defendants' motion for summary judgment regarding the postage stamp issue is **GRANTED.**

### *4. Oversized Greeting Card*

■ challenges the rejection of one greeting card. Defendants assert the size and type of greeting cards which may be sent to inmates is limited because of storage concerns, and because of the opportunity that oversized or padded or laminated or mechanical cards present to hide contraband.

These are legitimate penological interests which plaintiff has failed to refute. The regulation does not prohibit all greeting cards, merely those which present storage and contraband concerns. Plaintiff may still receive greeting cards which are not prohibited by the regulation. Defendants have shown this regulation is reasonably related to legitimate penological goals. Accordingly, **IT IS ORDERED** defendants' motion for summary judgment regarding the rejection of a greeting card is **GRANTED.**

### *B. Fifth Amendment Claim*

■ Plaintiff asserts the rejection of his mail constitutes a Fifth Amendment violation. Defendants focus on the portion of the Fifth Amendment which protects the rights of an accused in a criminal proceeding. The Fifth Amendment also provides that private property shall not be taken for public use without just compensation. U.S. Const. Amend. V; *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 123, 98 S.Ct. 2646, 2658–59, 57 L.Ed.2d 631 (1978). Plaintiff fails to show that property he was authorized to receive was taken for public use. It is clear plaintiff can prove no set of facts that would entitle him to relief under the Fifth Amendment. Accordingly, **IT IS ORDERED** plaintiff's Fifth Amendment claim is **DISMISSED WITH PREJUDICE.**

### *C. Eighth Amendment Claim*

■ Plaintiff asserts his Eighth Amendment rights were violated when defendants engaged in calculated discrimination and harassment tactics. Plaintiff also claims he heard defendant Warneka state, "Fucking Queer Magazines will never be allowed." Defendant Warneka denies making such a statement. This statement, even if true, however, does not state a constitutional violation.

To establish an Eighth Amendment violation, the inmate must prove a denial of "the minimal civilized measure of life's necessities," occurring through "deliberate indifference" by prison officials. *See Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir.1996). "Verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987). See *Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir.1985) (name calling and verbal threats

are not constitutional violations cognizable under section 1983); *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.) *cert. denied,* 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983) (mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations); *Shelly v. Johnson,* 684 F.Supp. 941, 946–47 (W.D.Mich.1987), *affirmed,* 849 F.2d 228 (6th Cir.) (alleged harassment and threats even with a guard pointing a loaded gun at an inmate did not rise to the level of constitutional violation). Here, plaintiff offers no evidence to support a claim that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. Accordingly, **IT IS ORDERED** defendants' motion for summary judgment regarding plaintiff's Eighth Amendment claim is **GRANTED.**

## D. Fourteenth Amendment Claim

### 1. Due Process

■ Plaintiff claims defendant Warneka directed plaintiff to appeal his mail rejections to defendant Wood, rather than to "seek justification" from defendant Warneka, in violation of plaintiff's due process rights. The mail rejection notice explains an inmate's right to appeal the rejection of his mail. (Ct.Rec.17, Ex.102.) Plaintiff admits he was given notice of each mail rejection and had the opportunity to appeal, if he chose to do so. Accordingly, plaintiff received sufficient due process of law in conjunction with the rejection of his mail. *See Procunier v. Martinez,* 416 U.S. 396, 418–19, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974), *overruled on other grounds, Thornburgh,* 490 U.S. 401, 109 S.Ct. 1874.

■ Furthermore, inmates are not constitutionally entitled to a grievance process. *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988), *cert. denied,* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988). The grievance process is strictly an internal procedural mechanism for handling of prisoner complaints. It does not involve substantive rights. Therefore, plaintiff does not have a constitutional claim with respect to the processing of his grievances by defendants Warneka, Woods, or Rolfs.

■ In addition, plaintiff claims defendant Warneka denied plaintiff prepaid publications. In his amended complaint, plaintiff indicates he sent a request for a magazine to *L.U.E.Y.,* along with a total of ten first class postage stamps. Six of the stamps were for shipping and handling. Defendant Warneka returned these items to plaintiff stating plaintiff would need to pay for the publications from his account.

Plaintiff has asserted no constitutional right which allows him to purchase a publication with postage stamps. The stamps and letter were returned to plaintiff. Plaintiff still may pay for the magazine out of his inmate account, understanding the magazine will be subject to inspection for compliance with the inmate mail policies. Plaintiff has failed to demonstrate that his due process rights were violated. Accordingly, **IT IS ORDERED** defendants' motion for summary judgment regarding plaintiff's due process claims is **GRANTED.**

### 2. Equal Protection

■ Prisoners are protected under the Equal Protection Clause against invidious discrimination based on race. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974); *Lee v. Washington,* 390 U.S. 333, 334, 88 S.Ct. 994, 994–95, 19 L.Ed.2d 1212 (1968). However, conclusory allegations by themselves do not establish an equal protection violation without proof of invidious discriminatory intent. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). When a suspect class is not implicated the court must determine whether alleged discrimination is " 'patently arbitrary and bears no rational relationship to a legitimate governmental interest.' " *Vermouth v. Corrothers,* 827 F.2d 599, 602 (9th Cir.1987) (quoting *Young v. United States Parole Comm'n,* 682 F.2d 1105, 1109 (5th Cir.), *cert. denied,* 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 517 (1982)).

Plaintiff asserts the mail rejections were motivated by discrimination against him and his sexual preference.

Plaintiff, however, failed to demonstrate that he is a member of a protected class or that the defendants' denial of his mail was a result of purposeful or invidious discrimination. *See Village of Arlington Heights*, 429 U.S. at 265, 97 S.Ct. at 563; *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2974–75; *Lee*, 390 U.S. at 334, 88 S.Ct. at 994–95. Moreover, as stated earlier, the prison policy regarding the mail rejected in this case is rationally related to a legitimate penological interest. *See Vermouth*, 827 F.2d at 602. Thus, plaintiff's claim that prison officials denied him his rights under the Equal Protection Clause is without merit. Accordingly, **IT IS ORDERED** defendants' motion for summary judgment regarding plaintiff's Equal Protection claim is **GRANTED.**

## CONCLUSION

Defendants have shown a rational connection between WSP's prohibition of unauthorized catalogs, sexually explicit materials, unauthorized stamps, and oversized greeting cards, and the stated penological concerns. Furthermore, plaintiff failed to come forward with any evidence to support his First, Fifth, Eighth and Fourteenth Amendment violation claims. Based on the disposition of this matter, the court does not address defendants' assertions regarding lack of personal participation by several defendants, failure to exhaust administrative remedies, failure to show physical injury, and qualified immunity.

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment, **Ct. Rec. 14,** is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's First, Fifth, Eighth and Fourteenth Amendment claims are **DISMISSED WITH PREJUDICE,** and judgment shall be entered in favor of defendants accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to plaintiff and counsel for defendants, and close the file.