Alycia L. HOMES–NAPLES, Plaintiff,

v.

GIRARD BOARD OF EDUCATION,
et al., Defendants.

No. 4:01CV00579.

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 30, 2001.

MEMORANDUM OPINION
AND ORDER

LIMBERT, United States Magistrate Judge.

The instant case came before this Court on Defendant Girard Board of Education's motion for summary judgment. *See* Electronic Court Filing (hereinafter "ECF") Dkt. # 17. Plaintiff filed an opposition memoranda and Defendant replied. *See* ECF Dkt. ## 18, 21. For the following reasons, the Court grants Defendant Girard Board of Education's motion for summary judgment on Plaintiff's racial and

gender discrimination claims. *See* ECF Dkt. # 17.

## I. PLEADINGS AND PROCEDURE

On March 9, 2001, Plaintiff Alycia L. Homes–Naples [1] (Plaintiff) filed a complaint against her employer, the Girard Board of Education a.k.a. Girard City Schools (Girard BOE), and her union, the Ohio Association of Public School Employees/AFSCME Local 4, AFL—CIO Local 425 (OAPSE). *See* ECF Dkt. # 1 OAPSE reacted by filing a motion to dismiss for lack of subject matter jurisdiction, while the Girard BOE answered. *See* ECF Dkt. # 5, 8 The parties consented to the jurisdiction of the undersigned in their joint report of parties planning meeting, and on April 25, 2001 the instant case was transferred to the docket of the undersigned. *See* ECF Dkt. # 11, 12. On June 20, 2001, pursuant to Rule 41(A)(1) of the Federal Rules of Civil Procedure, Plaintiff dismissed OAPSE from the instant case with prejudice. *See* ECF Dkt. # 16. Thus, Plaintiff's dismissal of OAPSE leaves the Girard BOE (hereinafter referred to as Defendant) as the sole remaining defendant in the instant case. *See id.*

In her complaint, Plaintiff, a black female, alleges racial and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. *See* ECF Dkt. # 1. Plaintiff asserted that she began employment with Defendant in 1985, and, on or about March 21, 2000, Defendant informed her that she was being demoted from the position of building custodian to assistant custodian. *See id.* at ¶ 4.[2] Prior to the demotion, Plaintiff worked as a building

---

**1.** In a proffered affidavit, Defendant clarifies that Plaintiff's last name is properly spelled Holmes–Naples. *See* ECF Dkt. # 17, exhibit A.

**2.** Plaintiff characterizes Defendant's employment action as a demotion, while Defendant characterizes it as a repositioning or reassignment. The word choice is irrelevant given that the instant case is being dismissed on unrelated grounds.

custodian at Defendant's Tod Woods school; after the demotion, Plaintiff worked as an assistant custodian at Defendant's Intermediate school. *See id.* at ¶¶ 3, 4.

■ Plaintiff avers that Defendant informed her that the demotion resulted from a reduction-in-force (RIF) due to the closure of the Tod Woods school and its consolidation with Defendant's Intermediate school. *See* ECF Dkt. # 1 at ¶ 6. Plaintiff contends THAT she was the only person negatively affected by the RIF precipitated by the combination of the two schools' workforces into one. *See id.* at ¶ 7. She argues that no other personnel at either school, including white males, suffered a demotion as a result of the consolidation. *See id.* According to Plaintiff, the demotion caused her to lose income and retirement benefits and changed her work schedule pejoratively. *See id.* at ¶ 5.[3]

Based upon these factual allegations, Plaintiff concludes that Defendant engaged in racial and gender-based discrimination against her in violation of Title VII of the Civil Rights Act of 1964 when Defendant demoted her from building custodian to assistant custodian in March, 2001. *See id.* at ¶ 12, 14.

On April 3, 2001, Defendant filed an answer to the complaint, denying most of the complaint's allegations and asserting that legitimate, nondiscriminatory reasons accounted for Plaintiff's reassignment. *See* ECF Dkt. # 5. In particular, Defendant avers that it reassigned Plaintiff to the Intermediate school due to the closure of the Tod Woods school. *See id.* at ¶ 2. Defendant further asserts that Plaintiff's reassignment fully complied with the se-

niority based RIF provisions contained in the collective bargaining agreement between Defendant and Plaintiff's union, OAPSE.

■ On June 20, 2001, Defendant filed the instant motion for summary judgment, which included an affidavit from Defendant's Superintendent, Dr. Anthony D'Ambrosio, Ph.D. *See* ECF Dkt. # 17. On June 29, 2001, Plaintiff filed a response in opposition to Defendant's motion for summary judgment. *See* ECF Dkt. # 18. Plaintiff's opposition memorandum did little else than argue for leave to conduct discovery and depose Defendant's affiant by the discovery cut-off date on November 1, 2001. *See id.* Plaintiff also attached her own affidavit challenging a few of the Superintendent's attestations. *See id.* On July 30, 2001, Defendant filed a reply brief in support of its motion for summary judgment. *See* ECF Dkt. # 27.

The time for discovery lapsed on November 1, 2001 and Plaintiff had not deposed Defendant's affiant, propounded any written discovery upon Defendant or even moved for an extension of the discovery cut-off date within the allotted time for discovery. *See* ECF Dkt. # 13. During a November 15, 2001 status hearing, Defense counsel represented that Plaintiff had not noticed the Superintendent's deposition or propounded *any* discovery requests upon Defendant. *See* ECF Dkt. # 22 (emphasis added). Plaintiff's counsel failed to attend the November 15, 2001 status conference. Given that the discovery deadline has passed and Plaintiff has not filed a supplemental memorandum in opposition, the undersigned finds Defen-

---

**3.** Plaintiff also avers that Defendant hired a white male sub-custodian during the consolidation, and after his complaints, made him an assistant custodian with commensurate pay. *See* ECF Dkt. # 1 at ¶¶ 8, 9. This averment, even assuming its validity, does not state a claim for racial discrimination since Plaintiff has failed to allege that the identified white male was treated more favorably than Plaintiff. Defendant employed both the white male and Plaintiff as assistant custodians after the consolidation. *See* ECF Dkt. 21 at 3.

dant's motion for summary judgment ripe for decision.

## II. UNDISPUTED FACTS

Defendant proffers the attested testimony of Dr. Anthony D'Ambrosio, Ph.D., Superintendent of the Girard Schools (Superintendent), in support of its motion for summary judgment. *See* ECF Dkt. # 17, exhibit A. In her affidavit, Plaintiff does not dispute the veracity of most of the Superintendent's attestations. *See* ECF Dkt. # 17, exhibit A, *and* ECF Dkt. # 18, Plaintiff's affidavit. The Court constructed the following narrative from the undisputed attestations contained in the Superintendent's affidavit. *See id.*

Defendant operated three schools in 1999: Girard High school, Prospect school, and the Tod Woods school. *See* ECF Dkt. # 17, exhibit A at ¶¶ 8–10.[4] Each school had a building custodian, Plaintiff being the building custodian for Tod Woods school. *See id.* Due to the age and condition of the Tod Woods school, Defendant decided to close the Tod Woods school and erect an new school next to Prospect school. *See id.* In order to erect a new school next to Prospect school, Defendant needed to pass a bond issue. *See id.* During the levy campaign, Defendant negotiated with OAPSE regarding the new

school staffing alignments that would result from passage of the bond issue. *See id.*

The bond issue passed and Defendant began to erect a new school adjacent to Prospect school. *See id.* The new school, called the Intermediate school, was connected to Prospect school by a common hallway so as to enable the students to share services such as art, music, physical education, clinic, media and computer labs and a cafeteria. *See id.* Defendant decided to treat the Intermediate school and Prospect school as one unit, building or complex for staffing purposes; Defendant referred to the Intermediate and Prospect schools as the Prospect campus. *See id.*, *and* exhibit 1 at 40.

The closure of Tod Woods school, the construction of the Intermediate school, and the treatment of the Intermediate and Prospect schools as one unit for staffing purposes were ratified by Plaintiff's union, OAPSE, in early June, 1999. *See* ECF Dkt. # 17, exhibit A at ¶ 4 *and* exhibit 1 at 40.[5] A collective bargaining or master agreement encompasses Defendant and OAPSE's overall accord. *See* ECF Dkt. # 17, exhibit 1. In terms of staffing, the master agreement permitted Defendant to eliminate one building custodian position with the closure of Tod Woods school and

---

4. Plaintiff attests in her affidavit that sometime before 1992, Marty Watts was appointed head building custodian of the Defendant's Washington Avenue school, when she should have been appointed based upon her higher seniority. *See* ECF Dkt.# 18, Plaintiff's affidavit at ¶ 18. Even assuming this attestation is true, Plaintiff does not contest that the Washington Avenue school was closed in 1992 and that Marty Watts was reassigned to an assistant custodian position at the time of the closure. *See id.* Therefore, any discrimination claim Plaintiff may have possessed based upon this attestation is most certainly time barred. *See EEOC v. Penton Indus. Pub. Co.,* 851 F.2d 835, 837 n. 5 (6th Cir.1988) (plaintiff must file with the EEOC within 300

days of the alleged discriminatory act). And, the continuing violation doctrine is inapplicable to Plaintiff's attestation since the school was ultimately closed in 1992 and Marty Watts was reassigned to an assistant custodian position. *See Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir.1991). Lastly, there are no claims in Plaintiff's complaint as to any discrimination that allegedly took place prior to 1992, and thus this Court finds Plaintiff's attestation to be irrelevant.

5. Plaintiff also does not dispute that her mother was a member of the OAPSE negotiating team that ratified the master agreement with Defendant. *See* ECF Dkt. # 17, exhibit A at ¶ 3.

still only provide for one custodian at the Prospect campus, even though comprised of two interconnected school buildings.[6] Defendant eliminated Plaintiff's position as a building custodian with the eventual closure of the Tod Woods school in March, 2001. *See* ECF Dkt. # 1 at ¶ 4.

At the time of the closure of the Tod Woods school, Defendant employed three *female* building custodians within its district: the Girard High school building custodian JoAnne Johntonny, whose date of hire was January 1, 1968; the Prospect building custodian Theresa Courtney, whose date of hire was July 17, 1972; and, Plaintiff, the Tod Woods building custodian, whose hire date was December 31, 1985. *See* ECF Dkt. # 17, exhibit A at ¶ 11 (emphasis added). The closure of the Tod Woods school and the union sanctioned decision to retain only one building custodian for the Prospect campus accounted for Defendant's reduction-in-force from three to two building custodian positions. *See id.*, exhibit A at ¶ 10.

According to the master agreement between Defendant and OAPSE, any reduction-in-force shall be accomplished by relying on seniority within a job classification; *i.e.* union members with more seniority will prevail over those with less seniority. *See* ECF Dkt. # 17, exhibit 1 at § 6.82. Thus, due to her lesser seniority, Defendant reassigned Plaintiff from building custodian at the Tod Woods school to assistant custodian at the Intermediate school. *See id.*, exhibit A at ¶¶ 10, 16. On the other hand, due to their longer seniority, the other two building custodians retained their positions as building custodians. *See id.*

In sum, Plaintiff does not dispute that (1) Defendant had a seniority based reduction-in-force agreement with Plaintiff's union allowing Defendant to reconfigure and consolidate its school system, and (2) that the two other building custodians at the time of the closure of the Tod Woods school were females with more seniority.

## III. STANDARD OF REVIEW

The function of summary judgment is to dispose of cases without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *See Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir.1982). Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(C) Under Rule 56, a party is entitled to summary judgment *where the documentary evidence produced by the parties permits only one conclusion. See Allen v. Wood,* 970 F.Supp. 824, 828 (E.D.Wash.1997) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (emphasis added).

---

**6.** Prior to the closure of the Tod Woods school and the construction of the Intermediate school next to the Prospect school, Prospect school had one building custodian. *See* ECF Dkt. # 17, exhibit A at ¶¶ 8–10. Defendant justifies its decision to not add another building custodian at the Prospect campus, after construction of the adjacent and connected Intermediate school. *See id.* Defendant rationalized that the Prospect campus, comprised of the Prospect and Intermediate schools, has approximately the same square footage as the Girard High school, which has operated with one building custodian for several years. *See id.*

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R.CIV.P. 56(c)). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir.1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* FED.R.CIV.P. 56(e). "Although the nonmoving party's evidence in opposition to summary judgment need not be of the sort admissible at trial, he must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts." *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990) The nonmoving party must do this by presenting more than a scintilla of evidence in support of his or her position. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. A movant is entitled to summary judgment if the non-movant, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *See Spells v. Cuyahoga Community College,* 889 F.Supp. 1023, 1026 (N.D.Ohio 1994).

## IV. LAW AND ANALYSIS

■ Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race or sex. *See* 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish a discrimination claim by introducing direct evidence of discrimination or by proving circumstantial evidence that would support an inference of discrimination. *See Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

■ Under the direct evidence approach, the plaintiff introduces direct evidence that her employer terminated her due to race or other protected status. *See Johnson v. University of Cincinnati,* 215 F.3d 561, 572 (6th Cir.2000). Once the plaintiff introduces such evidence, the burden of persuasion shifts to the employer to prove that it would have terminated the

plaintiff for non-discriminatory reasons. *See Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir.1994).

In proving a discrimination claim by introducing circumstantial evidence, the tripartite test of *McDonnell Douglas* is applied. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This test requires the plaintiff to establish a prima facie case of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case of discrimination, a plaintiff must show that:

1) she is a member of a protected class;

2) she was qualified for her job and performed it satisfactorily;

3) despite her qualifications and performance, she suffered an adverse employment action; and

4) that[sic] she was replaced by a person outside the protected class or was treated less favorably than a *similarly situated* individual outside her protected class.

*Johnson,* 215 F.3d at 572, citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 and *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (emphasis added).

Once the plaintiff establishes a prima facie case of discrimination under *McDonnell Douglas,* a presumption is raised that the defendant has violated Title VII and the burden shifts to the defendant to overcome this presumption by setting forth evidence that the adverse employment action arose from a legitimate, nondiscriminatory reason. *See Johnson,* 215 F.3d at 573, citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 and *Mitchell,* 964 F.2d at 582. If the defendant provides such reason, the burden shifts back to the plaintiff to prove that the proffered reason was

merely a pretext to hide the discrimination. *See id.* In order to demonstrate pretext, a plaintiff must do more than merely prove that a defendant's reason for the action is false. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509–11, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* at 515, 113 S.Ct. 2742. A plaintiff may show pretext in one of the three following ways: (1) the employer's proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the termination; or (3) the proffered reason was insufficient to explain the defendant's actions. *See Johnson,* 215 F.3d at 573; *Manzer,* 29 F.3d at 1084.

**A. Racial Discrimination**

■ In the instant case, Plaintiff asserts no direct evidence to prove that Defendant discriminated against her because of her race. Therefore, Plaintiff must meet the elements of the first part of the *McDonnell Douglas* framework in order to establish a prima facie case of discrimination through circumstantial evidence. Defendant basically concedes, for purposes of its motion only, that Plaintiff has met the first three elements for establishing a prima facie racial discrimination case. *See* ECF Dkt. # 17 at 9. However, Defendant persuasively argues that Plaintiff has failed to establish the fourth prong of her prima facie racial discrimination claim, *i.e.* she has failed to establish that similarly situated non-protected employees received preferential treatment. *See id.* The Court agrees with Defendant that Plaintiff has failed to establish that similarly situated non-protected employees received preferential treatment, and for this reason, the Court grants summary judgment in favor of Defendant on Plaintiff's racial discrimination claim. .

As to the fourth prong of her prima facie racial discrimination claim, the Court finds that Plaintiff was not similarly situated to other non-protected employees because Plaintiff had less seniority than the other two white female building custodians who kept their positions after Defendant's school closure and consolidation. *See* ECF Dkt. # 17, exhibit A at ¶ 12. As a result of the Tod Woods school closure and the consolidation of the newly built Intermediate school with the Prospect school, Defendant's school system went from three building complexes to two building complexes. *See* ECF Dkt. # 17 at 9. Thus, after the building closure and consolidation, Defendant required the services of only two building custodians as opposed to three. *See id.* Plaintiff's union consented to the staffing reduction, abolishing Plaintiff's building custodian position in the collective bargaining agreement with Defendant. *See id.* The agreement mandated that seniority status be the basis for carrying out any reduction-in-force. *See id.* Given that they had upwards of twelve or more years of seniority than Plaintiff, the two other building custodians, JoAnne Johntonny and Theresa Courtney, stayed on as the building custodians at Defendant's two remaining school complexes and Plaintiff was reassigned as an assistant custodian. *See id.*

■ In order to satisfy the similarly situated or comparability aspect of the fourth prong of the racial discrimination count, Plaintiff must demonstrate that she and the other two building custodians are "similarly-situated in all respects." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992). Federal courts have routinely held that employees are not similarly situated if they have differing amounts of seniority. *See Williams v. Widnall*, 173 F.3d 431, 1999 WL 68574, *9 (6th Cir. 1999), unpublished (other employee had

more seniority and thus was not similarly situated to plaintiff); *see also Martin v. Teledyne Brown Engineering*, 924 F.Supp. 1131, 1138 (S.D.Ala.1996) (black supervisory employee failed to establish prima facie case of race discrimination, since he presented no evidence of similarly situated white employee being treated differently; although employer retained two white supervisors when they laid black employee off, those supervisors had more seniority than he); *Redmond v. Day & Zimmerman, Inc.*, 897 F.Supp. 1380, 1385 (D.Kan. 1995) (retained employee was not similarly situated in terms of seniority to plaintiff, who was laid off in a reduction-in-force); *Marcano–Rivera v. Pueblo Intern., Inc.*, 232 F.3d 245, 252 (1st Cir.2000) (plaintiff failed to make prima facie showing of discrimination as reduction in force was implemented blindly, solely according to seniority within each job classification).

Thus, based upon the application of the Federal progeny, *supra*, to the undisputed facts that Defendant and Plaintiff's union agreed on a seniority based reduction-in-force resulting from the school system's reconfiguration and that Plaintiff had less seniority than either of the other two building custodians, the Court finds that Plaintiff has failed to established a prima facie case of racial discrimination as a matter of law.

■ Even assuming that Plaintiff could establish a prima facie case of racial discrimination, Defendant has outlined legitimate nondiscriminatory reasons for the reassignment of Plaintiff to the position of assistant custodian. The uncontested portions of the Superintendent's affidavit clearly establish that Plaintiff's transfer from a building custodian position to an assistant custodian position was the result of a reduction in force due to Defendant's reconfiguration of its school system from three to two complexes. *See* ECF Dkt. # 17 at 10. It is also unconverted that

Defendant's reconfiguration or consolidation into two complexes and the requisite need for only two building custodians promoted efficiencies and saved the school system dollar resources. *See id.* Further, the reconfiguration or consolidation of the school system and resultant reduction-in-force were an integral part of the collective bargaining agreement negotiated between Defendant and Plaintiff's union. *See id.* The collective bargaining agreement established seniority as the basis for the reduction-in-force, and when the reduction-in-force in fact occurred, Defendant was obligated to reposition Plaintiff due to her lesser seniority. *See id.* at 11. The undisputed attestations contained in the Superintendent's affidavit constitute overwhelming evidence of legitimate non-discriminatory reasoning for Plaintiff's reassignment.[7]

In sum, Plaintiff has proffered no evidence to support an essential element of her case of racial discrimination and Defendant has presented overwhelming evidence of legitimate nondiscriminatory reasoning for Plaintiff's reassignment. For these reasons, the Court GRANTS Defendant's Motion for summary judgment on Plaintiff's racial discrimination claim. *See* ECF Dkt. # 17.

### B. Gender Discrimination

■ Plaintiff makes only one averment in her complaint concerning gender discrimination; namely, that "her damages were directly related to gender discrimination." This Court finds this contention to be without any merit. *See* ECF Dkt. # 1 at ¶ 14. It is undisputed that the two individuals who remained as building custodians after the closure of the Tod Woods School are female. *See* ECF Dkt. # 17 at 9. Plaintiff has failed to state a claim or establish a prima facie case for gender

discrimination. *See* ECF Dkt. ## 1, 21. Plaintiff has not alleged or proven that she was treated less favorably than a similarly situated male when she was reassigned due to the Tod Woods school closure. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

The Court surmises that Plaintiff intended to state that her damages were related to "racial" not "gender" discrimination, since all the other allegations in her complaint go to alleged racial discrimination. *See* ECF Dkt. # 1. No matter whether Plaintiff's reference to "gender" discrimination was intentional or erroneous, this Court GRANTS Defendant's motion for summary Judgment on Plaintiff's gender discrimination claim because it is undisputed that the two individuals who remained as building custodians after the closure of the Tod Woods School are female.

### IV. CONCLUSION

This Court has found that Plaintiff's racial and gender discrimination claims could not survive summary judgment. This Court notes that Plaintiff, having had sufficient opportunity for discovery, has not proffered any evidence to support an essential element of her case. Further, Plaintiff's affidavit does not raise any material issues of fact that preclude Defendant's right to summary judgment. For the foregoing reasons, this Court GRANTS Defendants' motion for summary judgment on Plaintiff's racial and gender discrimination claims. *See* ECF Dkt. # 17.

**IT IS SO ORDERED.**

---

7. Plaintiff does not even allege, let alone offer any evidence, that Defendant's proffered rea-

soning for her demotion or reassignment was merely a pretext to hide the discrimination.